false
false
false
false
false

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION



JOHN T. LOMAX, JR.                                              PLAINTIFF

VERSUS                                                          NO.: 3:14cv463 HTW-LRA

SAM'S EAST, INC. d/b/a SAM'S CLUB                               DEFENDANT

JURY TRIAL DEMANDED

## COMPLAINT

This is an action to recover actual, liquidated and punitive damages for violation of federal anti-discrimination laws. The following facts support this action:

1.

Plaintiff, JOHN T. LOMAX, JR., is an adult resident citizen of 16 Arlington Park, Jackson, Mississippi 39211.

2.

Defendant, SAM'S EAST, INC., d/b/a SAM'S CLUB, is an Arkansas corporation doing business in the State of Mississippi, which may be served with process by service upon its registered agent, C T Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

3.

This Court has federal question jurisdiction under 28 U.S.C. § 1331, and civil rights jurisdiction under 28 U.S.C. § 1343, to address claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), and the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et. seq.*

4.

Plaintiff John T. Lomax, Jr. is currently seventy (70) years old. At the time of his termination by Defendant, Plaintiff was sixty-nine (69) years old.

5.

Defendant hired Plaintiff as a pharmacy manager in 2009. Plaintiff worked for the Defendant from that time until his discharge on or about August 15, 2013. Plaintiff's work record was exemplary, and there was never a claim that he was not an excellent pharmacy manager. Business at Sam's Club steadily increased during his tenure, and he had an excellent relationship with customers. In fact, in April, May and June 2013, before he was fired in August 2013, Plaintiff was forwarded several emails from Defendant to the effect that Plaintiff was doing a good job. Plaintiff also received almost ninety five percent (95%) of the highest possible bonus in January 2013. Toward the end of his employment, Plaintiff asked to switch job positions with his subordinate in order to decrease his administrative workload. Defendant declined the switch, obviously believing it needed Plaintiff to continue as pharmacy manager.

6.

On or about August 15, 2013, Defendant discharged Plaintiff from his employment.

7.

Defendant claimed that the reason for Plaintiff's discharge was that Plaintiff no longer met Defendant's "credentialing" standards, because of a licensing issue he had in 1980. In fact, Defendant adopted the "credentialing" standards at issue on September 14, 2011. These standards do not require the discharge of current employees, but state, instead, that Defendant "shall not hire as employees or engage as contractors any persons any persons involved in retail prescription filling or claims submissions that have been excluded from participating in State and Federal health care

programs." Exhibit "A." These regulations, by their terms, did not apply to Plaintiff, who was already hired when they were adopted, and had been working for Defendant for a substantial time. Despite the Defendants "credentialing" standards, Plaintiff was told in his exit interview that his rehire status was "Rehirable" (sic). This was told to the Plaintiff in the firing meeting and also expressed in writing on the exit interview.

8.

Upon information and belief, Defendant may have fired persons after it adopted credentialing regulations in late 2011, but it did not fire Plaintiff. Defendant knew that Plaintiff previously had licensing issues in 1980 and 1999. Plaintiff specifically told Defendant about those issues at the time he was hired.

9.

Plaintiff's discharge followed Defendant's learning about Plaintiff's having a serious medical condition. On May 13, 2013, pursuant to a regular checkup with his internist, Plaintiff was diagnosed with an atrial flutter. The physician advised Plaintiff that he would need to be off work for a substantial period of time, between May 15, 2013 and August 5, 2013. While Plaintiff never actually took off between those dates, Plaintiff did miss approximately eight (8) days of work between May 15 and August 5, 2013.

10.

Plaintiff received paperwork from his physician documenting his need for medical leave between May 15, 2013, and August 5, 2013. Plaintiff did not receive this form until a month after submitting it to his doctor. Meanwhile, Plaintiff continued to work when able. This paperwork was viewed by Defendant's store manager, who advised Plaintiff that he should not be working, since the doctor's statement used August 5, 2013 as the date of return. Plaintiff told the District Pharmacy

Manager about the completed doctor's statement, but she said she did not need it. Neither the store manager nor the District Pharmacy Manager ever accepted possession of the paperwork, but they knew that Plaintiff had a serious health condition and his doctor was requiring that he be off work between May 15, 2013 and August 5, 2013.

11.

At the time the store manager viewed the paperwork, he expressed concern about Plaintiff's health. These comments indicated that the store manager regarded Plaintiff as having a disability. After that initial date, the store manager continued to express concerns about Plaintiff's health.

12.

On August 15, 2013, Plaintiff was discharged from his employment. Defendant claimed the reason was the licensing issues which Plaintiff had in 1980 and 1999. As previously stated, these reasons were pretextual. Plaintiff was not disqualified to work because of any of Defendant's written policies, but even if this were the case, Plaintiff would have been terminated when Defendant adopted the relevant policies in 2011.

13.

But for Plaintiff's age, sixty-nine (69), Plaintiff would not have been terminated.

14.

But for Defendant's regarding Plaintiff as having a disability, Plaintiff would not have been terminated.

15.

But for Plaintiff's having taken necessary medical leave, and informing Defendant of the need for medical leave, Plaintiff would not have been terminated.

16.

Plaintiff's discharge violated the Age Discrimination in Employment Act ("ADEA"), the Family and Medical Leave Act (FMLA), and the Americans with Disabilities Act ("ADA").

17.

Plaintiff is entitled to damages for lost income and mental anxiety and stress, and punitive damages for violation of the Americans with Disabilities Act ("ADA").

18.

Plaintiff has filed the EEOC charge dated August 29, 2013, attached hereto as Exhibit "B," and has received the right-to-sue letter, attached hereto as Exhibit "C."

19.

Defendant is liable to Plaintiff for discrimination based on Plaintiff's disability, and his being regarded as having a disability.

20.

Plaintiff is entitled to actual damages for loss in pay, and for mental anxiety and stress. Because Defendant's actions are outrageous, punitive damages are also due.

### REQUEST FOR RELIEF

Plaintiff requests actual and liquidated damages for loss in pay, punitive damages in an amount to be determined by a jury, reinstatement and reasonable attorneys' fees, costs and expenses.

This the 11th day of June, 2014.

Respectfully Submitted,

WAIDE & ASSOCIATES, P.A.

BY: _____
     JIM WAIDE
     MS BAR NO: 6857
     RACHEL PIERCE WAIDE
     MS BAR NO: 100420

WAIDE & ASSOCIATES, P.A.
ATTORNEYS AT LAW
POST OFFICE BOX 1357
TUPELO, MISSISSIPPI 38802
TELEPHONE: 662-842-7324
FACSIMILE: 662-842-8056
EMAIL: waide@waidelaw.com

Attorneys for Plaintiff